John K. LINCOLN,
Petitioner-Appellant,

v.

Franklin Y.K. SUNN,
Respondent-Appellee.

No. 85–1712.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 22, 1985.

Decided Jan. 6, 1987.

806

Eric A. Seitz, Honolulu, Hawaii, for petitioner-appellant.

Willard J. Peterson, Arthur F. Ross, Honolulu, Hawaii, for respondent-appellee.

Before SKOPIL, FLETCHER, and ALARCON, Circuit Judges.

FLETCHER, Circuit Judge:

John Lincoln appeals from the district court's denial of his petition for habeas corpus without an evidentiary hearing. He requests relief from a sentence of life imprisonment with possibility of parole and an additional term of twenty years. He contends that he was denied a fair trial as a result of impermissible prosecutorial comment during closing argument, juror bias, lack of fair notice, and restrictions on the use of evidence during trial. We affirm in part, and reverse and remand in part for further proceedings.

## FACTUAL BACKGROUND

In 1978, Anthony Kekona and Patrick Hawkins went to a condominium on Maui

where Paul Warford, David Blue, and Harriet Savage were staying. Kekona shot and killed Warford and Blue, and seriously wounded Savage.

Kekona and Hawkins were arrested shortly after the shootings. Kekona pleaded guilty to two counts of murder and one count of attempted murder. During sentencing, Kekona stated that he and Hawkins acted alone in perpetrating the crimes, and that their original plan had been to rob, not kill, the victims.

After sentencing, Kekona changed his story and claimed that John Lincoln had hired him to kill the three victims. According to the prosecution, Lincoln reneged on the contract terms. He refused to pay Kekona $10,000 as agreed, failed to provide Kekona with a lawyer after Kekona was apprehended, and failed to kill adverse witnesses.

In late 1979, a grand jury indicted Lincoln on two counts of "murder for hire" and a third count of attempted murder. The trial court denied Lincoln's motions for change of venue based on pretrial publicity. Most of the jurors had been exposed to media accounts of the case. Trial began in March, 1980.

Lincoln did not testify at his trial. During the government's closing rebuttal statement, the prosecutor commented that "only one person," besides Kekona, could testify regarding certain events that allegedly involved Kekona and Lincoln.

The jurors were instructed that they could return the following verdicts: guilty of "murder for hire"; guilty of the "lesser included offense" of murder; guilty of the attempted murder of Savage; or not guilty. The jury ultimately acquitted Lincoln on charges that he had hired Kekona to kill Warford and Blue, but convicted him of the "lesser included offense" of their murders. In addition, the jury convicted Lincoln of the attempted murder of Savage. Lincoln timely appeals.

## DISCUSSION

We review the district court's decision to deny a writ of habeas corpus de novo. *Weygandt v. Ducharme*, 774 F.2d 1491, 1492 (9th Cir.1985); *Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985). Our review of a state petitioner's claims is only for the narrow purpose of determining whether due process has been violated. *Donnelly v. De Christoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

Our review of a petition denied without a hearing involves a two-part inquiry. First, we determine whether the petitioner has alleged facts which, if proven, would entitle him to relief. If so, we then ascertain whether an evidentiary hearing is necessary to establish the truth of the allegations. *Pierce v. Cardwell*, 572 F.2d 1339, 1340–41 (9th Cir.1978); *see Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

In this case, the district court's order, in its entirety, stated only that "having carefully reviewed the memoranda filed by the parties and the trial transcripts, [the court] finds that the plaintiff has failed to state a cause of action." The district court's order failed to provide us with meaningful findings and conclusions on the issues, and therefore, the basis for its decision is unknown to us. We may not affirm a district court's denial of a writ of habeas corpus unless the court either held a hearing, or the record shows that the district court independently reviewed the relevant portions of the state court record. *Richmond v. Ricketts*, 774 F.2d 957, 961 (9th Cir.1985); *Johnson v. Lumpkin*, 769 F.2d 630, 636 (9th Cir.1985).

Because there are no findings or conclusions, we cannot rest assured that an independent review was conducted in this case. *Rhinehart v. Gunn*, 598 F.2d 557, 558 (9th Cir.1979) (per curiam). It will therefore be necessary to remand to the district court those of Lincoln's assertions that state a claim for relief. *See Patterson v. Warden, San Luis Obispo*, 624 F.2d 69, 70 (9th Cir.1980) (per curiam) (remanding

habeas case to district court if its findings and conclusions are incomplete and lacking in specificity and petitioner has stated a claim for relief); *see also Whitley v. Miller*, 749 F.2d 634, 635 (11th Cir.1984) (per curiam) (same); *Jones v. Beto*, 448 F.2d 1259, 1260 (5th Cir.1971) (per curiam); (remand for findings, if court cannot determine whether dismissal was proper); *Naillieux v. Crouse*, 356 F.2d 499, 500 (10th Cir.1966). We examine each of Lincoln's contentions in turn.

## A. Prosecutorial Misconduct in Closing Argument

█ The Fifth Amendment prohibits the prosecutor from commenting on a defendant's decision not to testify. *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). While it is proper for the prosecution to address the defense's arguments, comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. *United States v. Bagley*, 772 F.2d 482, 494 (9th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); *United States v. Soulard*, 730 F.2d 1292, 1306 (9th Cir.1984).

█ Prosecutorial comment on the defendant's failure to testify mandates reversal "where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal." *United States v. Kennedy*, 714 F.2d 968, 976 (9th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984) (quoting *Anderson v. Nelson*, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968) (per curiam)). Improper comment warrants reversal only if it appears that the comment may possibly have affected the verdict. *United States v. Pruitt*, 719 F.2d 975, 978 (9th Cir.) (per curiam), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983).

Conversely, courts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions. *Soulard*, 730 F.2d at 1307; *Kennedy*, 714 F.2d at 976.

█ In Lincoln's case, the prosecutor made four arguably improper comments during his thirty-minute rebuttal argument.[1] Defense counsel objected twice. The court included a standard jury instruction cautioning jurors not to draw inferences from the defendant's failure to testify.

1. The prosecutor stated in part:
   Now, let's take a look at the sequence of events ... We know that on that date there was a phone call made from the Lincoln residence to the Kekona residence ... We also know, based upon what Kekona has testified, that it was Lincoln who called Kekona and told him that he had a job for Kekona ... whether the defendant was already on Maui or not cannot be determined ... [W]e really don't know what happened. *And there's only one person who can tell us.* ... Now in that telephone call, there are only two parties involved, the caller and the person receiving. Kekona, being the person receiving the call, told us what the call was about, *and there is only one other person who can testify* with regard to that call.
   ... It was established during the prosecution's case that although there is an airplane ticket in the name of J. Lincoln, police investigation ... cannot tie in the Defendant ... [T]o expect that ... people would be able to identify the person who used the ticket under the name of J. Lincoln in April of 1978 would be an impossible task. Again, *there is only one person who can tell you*, in addition to Kekona, whether he, in fact, did fly from Honolulu to Kaanapali. (Objection made and sustained) ...
   Mr. Seitz has said, "[w]here's the motive? ... What was the payoff for Mr. Lincoln? Who hired him? Who paid him? Mr. Kekona does not know. He was never told ... And the court and Mr. Seitz have told you the defendant need not testify. I suggest, ladies and gentlemen of the jury, that these questions with regard to the motive, the payoff, who hired him, and who paid him *are being asked of the wrong persons.*" (Objection made and sustained). (Emphasis added)
   R.T. Vol. 16, at 1010–19; *State v. Lincoln*, 3 Hawaii App. 107, 643 P.2d 807, 818–19 (1982).

The government offers two related justifications for its comments in rebuttal argument: (1) that the statements were offered, not for the purpose of highlighting the defendant's failure to testify, but in response to the defense's arguments that the prosecutor had failed to corroborate Kekona's testimony or prove Lincoln's motive, *see Bagley*, 772 F.2d at 494; (2) that it is permissible for the prosecution to comment on a defendant's silence if the prosecution does so in direct reply to defense statements that capitalize upon the defendant's silence, *see, e.g., Bradford v. Stone*, 594 F.2d 1294, 1296 (9th Cir.1979).

The repeated reference of the prosecution to the "only ... person" who could explain the evidence might be interpreted as a direct comment on the defendant's failure to testify, rather than as a legitimate rebuttal to the defense's arguments concerning lack of evidence of motive.

Courts have distinguished between those cases in which the defendant is the sole witness who could possibly offer evidence on a particular issue, and those cases in which the information is available from other defense witnesses as well. In *United States v. Cianciulli*, 482 F.Supp. 585, 591–92 (E.D.Pa.1979), the court held that when the defendant and a government witness were the only two persons at the scene of a crime, and therefore the defendant is the only witness who could rebut or negate the government witness's testimony, prosecutorial comment "suggesting that the jury should have heard more testimony can *only* cause the jury to *naturally* look to the *only* other evidence there is—the defendant—and, hence, this could be a prohibited comment on the defendant's failure to testify." (emphasis in original). *But cf. Kennedy*, 714 F.2d at 977 (no plain error when prosecutor commented that defense did not call a witness to explain how defendant got paint on his clothing).

In Lincoln's case, the prosecutor's allusion to facts that were within the knowledge of only two people—Kekona, who testified, and Lincoln, who did not—might therefore be presumed to be a reference to Lincoln's failure to take the stand.

The government's, and the state appellate court's reliance on *Bradford v. Stone*, 594 F.2d 1294 (9th Cir.1979) to justify the prosecution's comments is misplaced. *Bradford* holds that otherwise impermissible prosecutorial comment on a defendant's silence is acceptable if the defense first "opens the door" by arguing favorable inferences to be drawn from the silence. *Id.* at 1296. In *Bradford*, the defendant remained silent following his arrest. The defense chose to emphasize the defendant's silence and suggest several non-inculpatory reasons for it. *See also Kennedy*, 714 F.2d at 977 (defense counsel invited prosecutorial comment that defendant was not a witness at trial, by implying, based on defendant's statements to the FBI, that he *had* been a "witness").

Lincoln's counsel stressed the prosecution's failure to prove motive and then stated once in closing argument that Lincoln "hasn't testified for various technical and other reasons on my advice." We do not take seriously the government's argument that Lincoln's counsel's remarks were intended to "highlight his client's silence and plant an exculpatory inference within the minds of the jury." We do not equate his remarks with those of the defense counsel in *Bradford*, 594 F.2d at 1296.

This court, following Supreme Court's precedent, has held that a prosecutor may not resort to improper tactics in response to the tactics of the defense. *United States v. McKoy*, 771 F.2d 1207, 1212 (9th Cir.1985) (citing *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). The proper inquiry in such "invited response" cases is "whether the prosecutor's conduct, in light of defense conduct and in the context of the entire trial, had an effect on the jury's ability to judge the evidence fairly." *Id.*

Although we conclude that the prosecutor's remarks in this case were improper, we remand this issue to the district court to determine, in the first instance, whether the improper conduct, which was followed

by curative instructions, prejudiced Lincoln, or whether, in the context of the lengthy proceedings in this case, it constituted harmless error. *See Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (whether constitutional error is harmless is a question of federal law, but whether jury's deliberations were biased involves questions of historical fact entitled to section 2254(d)'s presumption of correctness); *Pruitt*, 719 F.2d at 978; *Turner v. Chavez*, 586 F.2d 111, 112 (9th Cir.1978) (per curiam) (determination whether prosecutor's improper comments constituted harmless error "necessarily requires a firsthand view of the record").

We note that the state appellate court never reached the question whether the prosecutor's comments, followed by curative instructions, prejudiced Lincoln. *State v. Lincoln*, 643 P.2d at 820.[2] If the district court finds it necessary, it should hold an evidentiary hearing on this issue, *see Burson v. Engle*, 432 F.Supp. 929, 932 (N.D. Ohio 1977), *aff'd* 595 F.2d 1222 (6th Cir.), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 316 (1979) (ruling that an evidentiary hearing must be held to determine whether an improper private communication between the judge and a juror was harmless error), or expand the record, *see Turner v. Chavez*, 586 F.2d at 112–13.

## B. Lack of Adequate Notice

The indictment in this case charged Lincoln with committing the offenses of "murder for hire," in violation of HRS §§ 707–701 and 706–606, and "attempted murder," in violation of HRS §§ 705–500 and 707–701.[3] At trial, the court gave jury instructions on the elements of "murder for hire," and then directed the jury that alternatively, it could find Lincoln guilty of the "lesser included offense" of murder.[4]

---

**2.** Rule 40(a)(3) of the Hawaii Rules of Penal Procedure limits the availability of post-conviction relief to matters that have not previously been ruled upon or waived. Because the issues Lincoln raises here were addressed by the Hawaii appellate court on direct appeal, state post-conviction relief on these issues was not available. However, Lincoln was permitted to raise the matter of "newly discovered evidence"—which consisted of Kekona's assertion that he had earlier lied about Lincoln—in a subsequent post conviction proceeding. *See Lincoln v. State*, 66 Hawaii 566, 670 P.2d 1263 (1983).

**3.** The statutes provide in relevant part:
   § 707–701 Murder. (1) ... [A] person commits the offense of murder if he intentionally or knowingly causes the death of another person.
   (2) Murder is a class A felony for which the defendant shall be sentenced to imprisonment as provided in section 706–606.
   § 706–606 Sentence for offense of murder. The court shall sentence a person who has been convicted of murder to an indeterminate term of imprisonment as follows:
   (a) Life imprisonment without possibility of parole in the murder of:

   .   .   .   .   .

   (iii) A person by a hired killer, in which event both the person hired and the person responsible for hiring the killer shall be punished under this subsection.

   .   .   .   .   .

   (b) Life imprisonment with possibility of parole in all other cases. The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669. [am L.1981, c. 27, § 1]
   § 705–500 Criminal attempt. (1) A person is guilty of an attempt to commit a crime if he:

   .   .   .   .   .

   (b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime.
   (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, he intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

**4.** Instruction No. 26: The Defendant Lincoln is charged with a criminal offense of Murder for Hire. A person commits this offense if he hires another person who intentionally or knowingly causes the death of the victim.
   In order to convict the Defendant of this offense, the State must prove each element of the crime charged beyond a reasonable doubt. These elements are, as to Count One, wherein the victim is Paul Roger Warford: (1) That Defendant did hire Anthony K. Kekona, Jr., to kill Paul Roger Warford; (2) That Anthony K. Kekona, Jr., as the hired killer, did intentionally or knowingly cause the death of Paul Roger

On direct appeal, Lincoln challenged the inclusion of the "for hire" language in the indictment as prejudicial and the incorrect jury instructions as confusing and inviting compromise.[5] He also claimed that the jury instructions unfairly surprised him with a new theory. The Hawaii court stated that the indictment gave adequate notice and found that the mislabeling of offenses and improper characterization of murder as a "lesser included offense" did not confuse the jury or invite compromise. In this collateral proceeding, although Lincoln alludes to jury confusion, his arguments pertain primarily to the notice issue: whether he was given notice sufficient to allow him to prepare his defense against an accomplice liability theory of guilt.

■■■■■ The sixth amendment guarantees a criminal defendant a fundamental right "to be informed of the nature and the cause of the accusation." *Givens v. Housewright*, 786 F.2d 1378, 1380 (9th Cir.

1986). By including the elements of the offense, an indictment informs the defendant of the charge against him, *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *see Givens*, 786 F.2d at 1380.

■■■■■ Therefore, to determine whether Lincoln received fair notice of the charges against which he was forced to defend, we look first to the indictment. *See id.* In this case, the indictment eroneously charged the "offense" of "murder for hire," even though the actual statutory offense was murder, and the existence of a murder contract was relevant only for purposes of sentence enhancement and not as an element of the offense. Arguably, an indictment that charges this technically non-existent offense might not give fair notice that the defendant must also be prepared to meet a murder charge that is based on a theory of accomplice liability.

Warford by shooting him. As to Count Two, wherein the victim is David Blue: (1) That Defendant did hire Anthony K. Kekona, Jr., to kill David Blue; (2) That Anthony K. Kekona, Jr., as the hired killer, did intentionally or knowingly cause the death of David Blue by shooting him.

Instruction No. 27: The Defendant is also charged with the criminal offense of Attempted Murder. A person commits this offense if he hires or solicits another person who attempts to intentionally cause the death of the victim by committing an act which constitutes a substantial step in the course of conduct intended to culminate in the commission of the crime of Murder.

In order to convict the Defendant of this offense, the State must prove each element of the crime charged beyond a reasonable doubt. These elements are: (1) That the Defendant did hire Anthony K. Kekona, Jr., to kill Harriet Savage; (2) That Anthony K. Kekona, Jr., as the hired killer, did attempt to intentionally cause the death of Harriet Savage by shooting her, an act which constitutes a substantial step in the course of conduct intended to culminate in the commission of the crime of Murder.

Instruction No. 28: Under our law, if a defendant is charged with an offense and the jury is not satisfied, beyond a reasonable doubt, that he is guilty of the offense charged, the defendant may be convicted of a lesser offense which is included within the offense with which he has been charged, provided, of course, that the evidence in the case convinces the jury beyond a reasonable doubt that he is guilty of such lesser-included offense.

In this case, the lesser-included offense is Murder. A person commits the criminal offense of Murder if he is an accomplice of another person in the commission of an offense if, with the intention of promoting or facilitating the commission of the offense, he solicits the other person or persons to commit it.

In order to convict the Defendant of the lesser included offense of Murder, the State must prove each element of the crime charged beyond a reasonable doubt. These elements are, as to Count One, wherein the victim is Paul Roger Warford: (1) That Defendant did solicit Anthony K. Kekona, Jr., to intentionally or knowingly cause the death of Paul Roger Warford: (2) That the Defendant did so with the intention of promoting or facilitating the commission of the offense of Murder. As to Count 2, wherein the victim is David Blue: (1) That Defendant did solicit Anthony K. Kekona, Jr., to intentionally or knowingly cause the death of David Blue.

5. The Hawaii appellate court held that inclusion in the indictment of factual allegations that could result in sentence enhancement was appropriate and not prejudicial. Thus, although the enhancement provision was "somewhat inartfully" stated in the indictment, i.e., as part of an "offense", the court found the indictment adequate. *State v. Lincoln*, 3 Hawaii App. 107, 643 P.2d at 816–17 (citing *State v. Apao*, 59 Hawaii 625, 586 P.2d 250 (1978)). The court did not address Lincoln's contention that the government's new theory surprised him.

However, while the indictment incorrectly labeled the offense, it explicitly alleged the elements of murder, and the means by which the murders occurred. The indictment provided correct statutory citations to the offenses and to the sentence enhancement section. Thus, an argument can be made that the indictment here adequately gave notice to the defendant that he must defend against the offense of murder. *Cf. United States v. Fekri*, 650 F.2d 1044 (9th Cir.1981) (defendant is deemed to have notice even if the indictment cites the wrong statute; the statement of facts in the indictment rather than statutory citations should control); *State v. Baker*, 55 Hawaii 621, 525 P.2d 571, 572 (1974) (indictment that contained technical error in wording did not prejudice defendant; under Hawaii law, offense may be charged either by name or by reference to the statute defining it).

However, resolution of this question does not end the inquiry. Lincoln's argument is that it was unfair to charge murder, clearly giving notice of the prosecution's theory that there was a murder contract, and then to place before the jury instructions regarding an alternative theory of Kekona's and Lincoln's relationship. He contends that, based on the indictment, he plotted his defense strategy on the assumption that if he could generate reasonable doubts in the minds of the jury concerning the existence of a contract, he would prevail.

Because of the unique and peculiar facts in this case, we do not decide the issue at this time, but instead leave that task initially to the district court. *See Johnson v. Lumpkin*, 769 F.2d at 638 (where issues presented by petitioner's sixth amendment claim were "novel, even unique," and the district court had dismissed the claim without giving its reasons, the reviewing court did not define those issues in detail, but provided guidance concerning the relevant inquiry to be pursued on remand). However, on remand, the district court should consider whether the deviation between the indictment and the jury instructions denied the defendant sufficient notice of the offense charged to permit him adequately to prepare and present his defense. *See United States v. Lemire*, 720 F.2d 1327, 1344 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

A change in the government's theory late in the case might constitute prejudicial variance, *see Lemire*, 720 F.2d at 1345–46, or a constructive amendment, *see Watson v. Jago*, 558 F.2d 330, 339 (6th Cir.1977). A critical consideration is whether the introduction of the new theory changes the offense charged, *United States v. Weiss*, 752 F.2d 777, 787 (2d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985); *Watson v. Jago*, 558 F.2d at 339 (where indictment originally charged first degree murder, indictment could not be amended to charge felony murder, a separate offense in Ohio); *United States v. Smolar*, 557 F.2d 13, 18–19 (1st Cir.1977) (change in theory from "outright fraud" to "breach of fiduciary duty" resulted in a "significantly different offense from the one charged in the indictment; instructions materially altered the theory of criminal liability"); *Boothe v. Wyrick*, 452 F.Supp. 1304, 1311 (W.D.Mo. 1978) (no prejudice when indictment amended to charge felony murder instead of first degree murder, because the two crimes were not separate offenses under state law), or so alters the case that the defendant has not had a fair opportunity to defend. *Givens*, 786 F.2d at 1381 (information charging first degree murder gave inadequate notice of trial for murder by torture); *Weiss*, 752 F.2d at 790 (examining appellant's contention that although his defense was appropriate against the government's bribery theory, it was not appropriate against the government's "breach of duty" theory); *Lemire*, 720 F.2d at 1345.

This court considered an argument analogous to that raised by Lincoln in *United States v. Kartman*, 417 F.2d 893 (9th Cir. 1969). In that case, the defendant was charged with violating 18 U.S.C. § 111, assaulting a federal deputy marshal. The indictment erroneously alleged a non-existent element of the offense—that defend-

ant had knowledge of the deputy's status as a marshal. *Id.* at 894. This court rejected the defendant's argument that he had been denied a fair trial because he structured his defense to prove he had no such knowledge.

The court gave two reasons for its holding. First, the defendant had been aware of the government's position that knowledge was not an element of the offense. Second, because the defendant's knowledge was in fact relevant to the possible defense of "mistake of fact," the court reasoned that the only possible prejudice to the defendant would lie in the degree of emphasis given the knowledge issue by the defense. *Id.* at 895–96. Similarly, Lincoln contends that he based his defense on the assumption that the prosecution was required to prove the existence of a murder contract as an element of the offense.

We note other circumstances in which the defendant has been held to have adequate notice, even though the conviction was at variance with the original offense charged. *See Salinas v. United States,* 277 F.2d 914, 918 (9th Cir.1960) (defendant has notice of lesser offenses included within an indictment charging a more aggravated degree of that offense; first degree arson charge for burning a dwelling house provides notice of charge of second degree arson for burning a structure); *United States v. Cova,* 755 F.2d 595 (7th Cir.1985) ("[i]t is inconceivable that in preparing a defense against a charge of conspiracy to distribute cocaine, [the defendant] was precluded from adequately defending himself against [conspiracy to possess,] a lesser included offense); *Giraud v. United States,* 348 F.2d 820, 822 (9th Cir.1965) (no

prejudice if indictment charges defendant as a principal, but court instructs the jury that defendant may be liable as an aider or abetter), *cert. denied,* 382 U.S. 1015, 86 S.Ct. 627, 15 L.Ed.2d 529 (1966); *Brinlee v. Crisp,* 608 F.2d 839, 853 (10th Cir.1979) (where information charged that defendant acted in concert with others, court did not err in refusing to force government to elect between theory that appellant committed the murder and theory that he aided and abetted), *cert. denied,* 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980); *Rodriguez v. Texas,* 449 S.W.2d 470, 471 (Tex. Crim.App.1970) (it does not constitute a substantive alteration or amendment to an indictment if court dismisses the enhancement portion of an indictment); *Ellis v. United States,* 321 F.2d 931, 932 (9th Cir. 1963) (indictment need not allege means or method used to aid and abet).

■ Having framed the relevant inquiry, we leave it to the district court to explore this issue fully and determine whether Lincoln has demonstrated that he was deprived of fair notice.[6]

### C. *Right to Trial Before a Fair and Impartial Jury*

■ Lincoln claims that he was denied a right to a fair and impartial jury because jurors were exposed to excessive prejudicial pretrial publicity, and because one prospective juror, who admitted she would doubt the credibility of the prosecution's key witness, was excused for bias. Determinations of juror bias are factual determinations to which the presumption of correctness under 28 U.S.C. § 2254(d) applies, *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 853–55, 83 L.Ed.2d 841 (1985);

---

6. We do not think that the erroneous characterization in the instructions of murder as a "lesser included offense" of "murder for hire" by itself, would warrant collateral relief. Although an incorrect statement, it was not so egregious to constitute a violation of due process. *See Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (burden of showing that an erroneous jury instruction will support collateral attack exceeds the showing necessary to establish plain error); *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400,

38 L.Ed.2d 368 (1973) ("it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated [the defendant's constitutional rights]"). However, the district court should determine whether this error, in conjunction with the other alleged errors, cumulatively deprived Lincoln of his rights. *See United States v. McLister,* 608 F.2d 785, 789 (9th Cir.1979) (cumulative errors may require reversal); *Kartman,* 417 F.2d at 896–98 (same).

*Austad v. Risley*, 761 F.2d 1348, 1350 (9th Cir.1985) (en banc), *cert. denied,* — U.S. ——, 106 S.Ct. 163, 88 L.Ed.2d 135 (1985), although the constitutional standard of jury impartiality is a question of law. *Patton v. Yount*, 467 U.S. 1025, 1037 n. 12 (1984).

### 1. Pretrial Publicity

Lincoln argues that he was denied a fair trial because the trial was held in a small community where the jurors had been exposed to pretrial publicity. Lincoln claims that the trial court should have granted his motion for change of venue or should have taken other steps to offset the effects of pretrial publicity. The Hawaii appellate court found that the trial court's procedure adequately protected Lincoln, and therefore implicitly found no juror bias. *See Townsend v. Sain*, 372 U.S. 293, 314–15, 83 S.Ct. 745, 757–58, 9 L.Ed.2d 770 (1963) (district court can reconstruct state court's findings on the merits when its view of the facts is clear from the opinion or from other indicia).

■ Due process requires that the defendant have a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *Accord Murphy v. Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975). The fact that there was extensive knowledge in the community of the defendant and the crime does not render the trial presumptively unfair. *Bashor v. Risley*, 730 F.2d 1228, 1235 (9th Cir.), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). A preconceived notion as to the defendant's guilt or innocence, without more, does not rebut a juror's presumed impartiality, as long as the juror can lay aside his or her impression and render a verdict on the evidence. *Murphy*, 421 U.S. at 800, 95 S.Ct. at 2036.

■ However, a juror's assertion of impartiality is not dispositive, if the defendant can demonstrate "the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality." *Id.* When the petitioner alleges prejudicial pretrial publicity on appeal, the proper approach for the court is to evaluate independently the voir dire testimony to ascertain whether a " 'pattern of deep and bitter prejudice shown to be present throughout the community' had invaded the jury box," *United States v. Haldeman*, 559 F.2d 31, 61–62 & n. 32 (D.C.Cir.1976) (quoting *Irvin v. Dowd*, 366 U.S. at 727, 81 S.Ct. at 1645) (holding that although pretrial publicity concerning Watergate was massive, pre-voir dire request for a change of venue was unwarranted), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

The state trial court permitted individual voir dire of venire members by counsel. *See State v. Lincoln*, 3 Hawaii App. 107, 643 P.2d at 814. Lincoln does not specifically contend that any particular juror was biased; but merely asserts that the dismissal for cause of eleven venire members is indicative of prejudice from pretrial publicity.

■ The district court had a duty to examine independently the state court record to ascertain whether the presumption of correctness should attach to the state court factual findings. *See Reiger v. Christensen*, 789 F.2d 1425 (9th Cir.1986). The court's lack of findings and conclusions precludes this court from deciding the merits of Lincoln's claim. We remand to the district court for specific findings and conclusions.

### 2. Exclusion of Prospective Juror for Bias

One prospective juror was excused for bias by the court after she indicated she would be prejudiced against Kekona, the key prosecution witness, because of his murder conviction. The court ultimately excused her after counsel asked whether she could ever believe the sworn testimony of a witness with a criminal record and she responded "[r]arely."

■ Jurors are objectionable if they have formed such deep and strong impressions that they will not listen to testimony with an open mind. *See Irvin v. Dowd*, 366

U.S. at 722 n. 3, 81 S.Ct. at 1642 n. 3; *see also United States v. Richardson*, 582 F.2d 968, 969 (5th Cir.1978) (juror who expressed doubt that a case argued by the government could ever be convincing excused for cause); *cf. United States v. Tegzes*, 715 F.2d 505, 507 (11th Cir.1983) ("bias or prejudice toward crime does not disqualify one to sit as a juror in a criminal case so long as those feelings do not lead to a predisposition toward the prosecution or accused.").

In this case, the state court found no error in the dismissal of a prospective juror with an apparently admitted, strong bias. On remand, the district court shall issue written findings and conclusions regarding the sufficiency of the state court's findings.

### D. Evidentiary Rulings

#### 1. Production of Handwritten Notes

■ Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected. *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir.1986). Lincoln contends that the government's failure to produce a police detective's handwritten notes deprived him of an opportunity effectively to cross-examine the government's witness. Detective Danley wrote the notes after a conversation with Lincoln, in which Lincoln allegedly made statements that corroborated portions of Kekona's testimony. Detective Danley destroyed the notes after incorporating their substance into a typed report.

■ The Supreme Court's decision in *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and the Jencks Act, 18 U.S.C. § 3500 state evidentiary rules governing federal trials, and do not invoke constitutional considerations. *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 533, 21 L.Ed.2d 537 (1969) (holding that the failure to produce rough notes which were not verbatim statements and therefore did not fall within Jencks Act, and tapes which were Jencks Act ma-

terials, did not present a case that was a "worthy candidate for consideration at the constitutional level"). Principles of the federal Jencks Act are therefore not binding in state court criminal trials. *Id; State v. Kahinu*, 53 Hawaii 536, 498 P.2d 635, 639 n. 3 (1972), *cert. denied*, 409 U.S. 1126, 93 S.Ct. 944, 35 L.Ed.2d 258 (1973).

Thus, Lincoln's claim alleging violations of Hawaii's rules of criminal procedure, which are modeled after the federal Jencks Act, is not appropriate for consideration in this collateral proceeding. *See Givens*, 786 F.2d at 1381; *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir.1983) (state prisoner could not challenge correctness of evidentiary ruling regarding the invocation of official information evidentiary privilege).

#### 2. Restrictions on the use of Prior Inconsistent Statements

■ Lincoln argues that he was denied a fundamentally fair trial because the trial court restricted his use of Kekona's and Hawkins's prior inconsistent statements. These statements supported Lincoln's claim that he did not hire Kekona. Although the trial court permitted use of the prior inconsistent statements for impeachment purposes, the jury was instructed not to consider the statements substantively. The trial court's ruling complied with the Hawaii Rules of Evidence in effect at the time, although those rules were subsequently changed to permit substantive use of impeachment evidence.

Lincoln relies on *Welcome v. Vincent*, 549 F.2d 853 (2d Cir.), *cert. denied*, 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (1977) and *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) to support his due process argument; however, his reading of these cases is overbroad.

Both *Chambers* and *Welcome* involved cases in which a third party confessed to the murder for which the defendant was on trial. In *Chambers*, the Supreme Court held that the exclusion of witnesses' testimony regarding the critical confession, combined with the refusal to permit the

defense to cross-examine the person who had confessed, because he was the defense's own witness, deprived the defendant of a fair trial. The Court carefully limited the holding to the facts and circumstances before it and stated that it established no new constitutional principle. *Chambers*, 410 U.S. at 302–03, 93 S.Ct. at 1049–50 (also noting that the testimony was both critical and "bore persuasive assurances of trustworthiness").

Similarly, in *Welcome v. Vincent*, 549 F.2d at 857, the Court confined its holding to instances in which a third person, on the witness stand, had previously confessed to the crime for which defendant is on trial, the trial court had failed to permit cross-examination of that witness, and the earlier confession was trustworthy. The court specifically "disavow[ed] any attempt to 'constitutionalize' the law of evidence pertaining to the use of prior statements of a witness." *Id.* at 858–59.

In Lincoln's case, the defense was permitted to impeach the witness with the prior inconsistent statements. Neither *Chambers* nor *Vincent* established a constitutional requirement that the defense be permitted to utilize such testimony substantively. *See also Ferreira v. Fair*, 732 F.2d 245, 248 (1st Cir.) (habeas petitioner was not denied due process because of the trial court's restriction on use of witnesses' statements for impeachment purposes only; testimony bore none of the indicia of trustworthiness that was crucial to holding in *Chambers v. Mississippi*), *cert. denied*, 469 U.S. 1017, 105 S.Ct. 430, 83 L.Ed.2d 356 (1984). Lincoln fails to state a claim with respect to this issue.

### CONCLUSION

We remand this case to the district court for further consideration and determination of Lincoln's claims that he was prejudiced by improper prosecutorial misconduct and by lack of notice as to the issues against which he had to defend. The court should take whatever steps it deems appropriate

to evaluate Lincoln's claims, in light of this opinion, including holding an evidentiary hearing if necessary. The district court must also determine whether the state court's factual findings in this case on the issue of juror bias should be afforded a presumption of correctness and make findings and conclusions as to the sufficiency of the state court findings. This panel retains jurisdiction over any subsequent appeals.

The district court judgment is AFFIRMED in part, REVERSED and REMANDED in part.