15 F.3d 1093
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Peter MACDONALD, Defendant-Appellant.
 No. 92-10717.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 16, 1993.
Decided Jan. 6, 1994.
 
 1
 Before: SKOPIL, THOMPSON, RYMER, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Peter MacDonald was convicted by a jury on charges of Racketeering ("RICO"), 18 U.S.C. Sec. 1962(c); Racketeering Conspiracy, 18 U.S.C. Sec. 1962(d); Extortion by an Indian Tribal Official, 18 U.S.C. Sec. 666(a)(1)(B); Mail Fraud, 18 U.S.C. Sec. 1341; Wire Fraud, 18 U.S.C. Sec. 1343; and Interstate Transportation in Aid of Racketeering ("Travel Act"), 18 U.S.C. Sec. 1952. On appeal, MacDonald challenges the sufficiency of the indictment and of the evidence on the RICO, mail fraud, and wire fraud charges. He also argues that he was denied a fair trial, based on the admission of evidence of an uncharged crime, inflammatory and improper closing arguments by the prosecuting attorney, and the prosecutor's comment on MacDonald's failure to testify. We reject all of MacDonald's arguments, and we affirm.
 
 DISCUSSION
 1. Sufficiency of the Indictment
 
 4
 MacDonald challenges the sufficiency of the indictment as to Counts 1 and 2 (RICO and RICO conspiracy), Counts 12 and 14 (mail fraud), and Counts 13 and 15 (wire fraud). An indictment must present a description of the charges sufficient to enable a defendant to prepare his defense, to insure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead double jeopardy against a later prosecution, and to inform the court of the facts alleged so it can determine the sufficiency of the charges. United States v. Lane, 765 F.2d 1376, 1380 (9th Cir.1985). In addition to alleging the elements of the offense charged, an indictment must include some indication of the factual activity on which the allegations are based. Id.
 
 
 5
 MacDonald argues that the indictment's factual allegations concerning the loan from the tribe were insufficient because the indictment failed to allege that he breached a duty to disclose material information to the tribe. We disagree. Count 1 of the indictment alleges that "Morelli, acting ... under Peter MacDonald's political power as Chairman of the Navajo Tribal Council, persuaded the EDC members to loan NTI $2,250,000. Had the Navajo Tribal Council known at the time that Peter MacDonald was to be given NTI stock money, it would not have approved the loan request." The indictment thus adequately informed MacDonald that he was charged with failing to disclose to the tribe his connections with NTI. See United States v. Givens, 767 F.2d 574, 584 (9th Cir.) (indictment should be interpreted to include allegations that are necessarily implied), cert. denied, 474 U.S. 953 (1985).
 
 
 6
 MacDonald also argues that the indictment failed to allege sufficient facts regarding the XSELL contract, because it did not allege facts that would show that either XSELL or NTI were defrauded. Count 1 of the indictment alleges that 1) MacDonald was to receive money from NTI after NTI obtained a multi-million dollar loan from the Navajo Tribe; 2) MacDonald demanded $120,000 a year, to be paid through his son Rocky's position as a consultant; 3) to conceal the source of this money, the defendants had NTI pay XSELL $11,000 a month, $10,000 of which went to Rocky; and 4) the intention was to defraud NTI of $33,000. Taken together, these allegations sufficiently apprised MacDonald of this charge. See id. (indictment should be read in its entirety and construed according to common sense).
 
 
 7
 Count 2 expressly incorporates the factual allegations of Count 1, and thus is also sufficient. Although the fraudulent schemes are not described in Counts 12-15 (mail and wire fraud), these counts allege exactly the same mailings and telephone calls and the same fraudulent objects as alleged in Count 1. Because Count 1 adequately described the fraudulent scheme, MacDonald was left with no doubt as to the activity that he was charged with in the mail and wire fraud counts. MacDonald does not argue that he in fact did not receive adequate notice of the charges that were proven at trial, and it is apparent that the grand jury intended to indict on the same facts as those laid out in Count 1. The criminal activity for which he was tried is perfectly clear, and thus no potential difficulties in arguing double jeopardy appear. In these circumstances, reading the factual allegations in Count 1 together with Counts 12-15 is appropriate. See United States v. Thomas, 893 F.2d 1066, 1070 (9th Cir.), cert. denied, 498 U.S. 826 (1990). Read in light of the Count 1 allegations, Counts 12-15 were also adequate.
 
 
 8
 2. Variance Between the Indictment and the Evidence
 
 
 9
 MacDonald argues that evidence of schemes and misrepresentations not mentioned in the indictment was introduced at trial, and thus he may have been convicted of acts that were not charged in the indictment. "A defendant cannot be convicted of a count charging participation in a fraudulent scheme Y where the grand jury indicted based on his participation in a fraudulent scheme X, even if the schemes themselves overlap ..." United States v. Mastelotto, 717 F.2d 1238, 1248-49 (9th Cir.1983).
 
 
 10
 Although MacDonald argues that the convictions may have been based on any one of several schemes, what he characterizes as schemes are actually misrepresentations. The evidence at trial related directly to the schemes alleged in the indictment, and did not introduce additional schemes. MacDonald thus was not convicted for devising fraudulent schemes that were not identified in the indictment.
 
 
 11
 Nor did the government's evidence of misrepresentations not alleged in the indictment amount to a fatal variance. The elements of mail or wire fraud are (1) use of the mail or telephone in interstate commerce, (2) in furtherance of a scheme to defraud, (3) with the intent to defraud. United States v. Bonanno, 852 F.2d 434, 440 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). The making of misrepresentations is not a necessary element of the crime. United States v. Bohanus, 628 F.2d 1167, 1172 (9th Cir.), cert. denied, 447 U.S. 928 (1980). Rather, misrepresentations are evidence that the defendant devised a scheme to defraud. See United States v. Amrep Corp., 560 F.2d 539, 546 (2d Cir.1977) (citing Simons v. United States, 119 F.2d 539, 549 (9th Cir.), cert. denied, 314 U.S. 616 (1941)), cert. denied, 434 U.S. 1015 (1978). If the scheme is adequately alleged, the indictment need not allege the specific misrepresentations that are used to prove that scheme. See United States v. Begnaud, 783 F.2d 144, 148 (8th Cir.1986); cf. United States v. Musacchio, 968 F.2d 782, 788 (9th Cir.1991) ("the government is not required to allege its supporting evidence in the indictment"). Because the misrepresentations proven at trial relate to the same scheme that the grand jury delineated in the indictment, the evidence did not amount to a variance requiring reversal.
 
 
 12
 3. Sufficient Evidence of Fraud Based on the XSELL Contract
 
 
 13
 MacDonald argues that the evidence was insufficient to convict him of mail and wire fraud pursuant to the XSELL contracts (Count 1, Act 3 and Counts 14 and 15), because it did not establish that he made any affirmative misrepresentations to NTI, or that he breached a duty to disclose material information to NTI. See United States v. Dowling, 739 F.2d 1445, 1449 (9th Cir.1984), rev'd on other grounds, 473 U.S. 207 (1985). The government's theory, however, was that defendants entered the contracts with XSELL for no reason other than to hide payments from NTI to MacDonald. This is not a case where defendants merely failed to give pertinent information regarding a contract; they affirmatively entered the contract as a means of deceit.
 
 
 14
 Sufficient evidence was introduced to allow the jury to find that the XSELL contract was in itself an affirmative act of "false or fraudulent pretenses, representations, or promises," 18 U.S.C. Secs. 1341, 1343. The government introduced evidence from which the jury could have concluded that the contract purported to be for services that defendants never intended NTI to receive, and that as such the contract was an affirmative misrepresentation. Cf. United States v. Rasheed, 663 F.2d 843, 848-49 (9th Cir.1981), cert. denied, 454 U.S. 1157 (1982); United States v. O'Malley, 707 F.2d 1240, 1247 (11th Cir.1983).
 
 4. RICO Convictions
 
 15
 MacDonald challenges his RICO convictions, arguing that there was insufficient evidence to convict him of the predicate crimes of mail and wire fraud charged in Racketeering Acts 1 and 3. Because we have determined that there is sufficient evidence of fraud relating to the XSELL contract, on which Act 3 is based, only the challenge to Act 1 remains.
 
 
 16
 Because the jury returned a general verdict, MacDonald argues that we cannot know which of the charged racketeering acts the jury found he had committed, and that the jury might have based his conviction on Act 1, for which there was insufficient evidence. However, the jury did not convict MacDonald on any of the separate counts that correspond with the predicate crimes charged in Racketeering Act 1. Failure to convict on a separate count corresponding to a RICO predicate crime indicates that the jury did not base a RICO conviction on that predicate crime. See United States v. Riccobene, 709 F.2d 214, 229-30 (3d.Cir.), cert. denied, 464 U.S. 849 (1983).
 
 
 17
 To hold otherwise would be to assume that the jury may have irrationally returned inconsistent verdicts. Id.; see also, United States v. Brennan, 867 F.2d 111, 115 (2d Cir.), cert. denied, 490 U.S. 1022 (1989); United States v. Anderson, 809 F.2d 1281, 1284 (7th Cir.1987). Here, since the jury was unable to reach a verdict as to the mail and wire fraud charges in Counts 10 and 11, it is safe to assume that the jury also failed to agree that MacDonald had committed the mail or wire fraud charged in Racketeering Act 1, which alleged exactly the same conduct and the same crimes. Accordingly, we can surmise that the jury did not base the RICO convictions on Act 1. Cf. United States v. Lopez, 803 F.2d 969, 974-75 (9th Cir.1986) (jury conviction based on particular predicate crimes inferred from conviction of codefendant on the same predicate crimes), cert. denied, 481 U.S. 1030 (1987). As the sufficiency of the evidence as to the other acts is not at issue, we affirm the RICO convictions.
 
 5. Rule 404(b) Evidence
 
 18
 MacDonald argues that the district court should not have admitted evidence of his submission of phoney rental receipts to the tribe for payment under Federal Rule of Evidence 404(b). Although evidence of prior bad acts is admissible under Rule 404(b) to prove intent, the government must first show that the acts were similar to the crimes charged. United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir.1991).
 
 
 19
 Although the similarity between the submission of phoney rental receipts and the crimes charged is questionable at best, any error was harmless. The district court properly instructed the jury that it was to use the evidence only to determine whether MacDonald had the requisite intent to commit the crimes charged. As MacDonald points out, the government introduced overwhelming evidence of similar crimes to show that MacDonald did have that intent. In the light of this other evidence, the admission of the challenged evidence did not likely affect the verdict. See United States v. Bishop, 1 F.3d 910, 911 (9th Cir.1993); United States v. Arambula-Ruiz, 987 F.2d 599, 605 (9th Cir.1993).
 
 6. Improper Prosecutorial Argument
 
 20
 MacDonald argues that he was denied a fair trial due to the closing arguments of the prosecuting attorney, which MacDonald claims implied that he was more culpable because he held high political office and had a lavish lifestyle, in contrast to the poverty-stricken residents of the Navajo Reservation. MacDonald also argues that the prosecutor should not have alluded to the Tribe's change of governmental structure, as that change was irrelevant to this case.
 
 
 21
 Because defense counsel failed to object to the arguments at trial, we review for plain error. United States v. Young, 470 U.S. 1, 6 (1985). Under the plain error standard, "[w]e reverse only if, viewing the error in the context of the entire record, the impropriety seriously affects the fairness, integrity or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir.1993) (internal quotations omitted).
 
 
 22
 In this case, any error committed by the prosecuting attorney in his closing arguments did not amount to plain error. While the prosecutor's statements may have been close to the line separating permissible "hard blows" from impermissible "foul blows," see id. at 1282, subsequent statements by both defense counsel and prosecutor clarified any misleading characterization of the issues. See United States v. Monaghan, 741 F.2d 1434, 1443 (D.C.Cir.1984) (improper comments mitigated in part by prosecutor's later statements), cert. denied, 470 U.S. 1085 (1985). Under these circumstances, and given the substantial evidence of MacDonald's guilt, it is unlikely that the prosecutor's statements led the jury to a guilty verdict that it otherwise would not have reached. Cf. United States v. Williams, 989 F.2d 1061, 1072 (9th Cir.1993); United States v. Makhlouta, 790 F.2d 1400, 1403 (9th Cir.1986).
 
 
 23
 Assuming that the evidence as to the change in the tribe's governmental structure was irrelevant, and therefore should not have been mentioned in closing arguments, it was not so prejudicial as to require reversal as plain error.
 
 
 24
 7. Prosecutorial Comment on MacDonald's Failure to Testify
 
 
 25
 MacDonald argues that his convictions should be reversed because the prosecuting attorney commented on his failure to testify. "The Fifth Amendment prohibits the prosecutor from commenting on a defendant's decision not to testify." Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.1987). Such a comment warrants reversal, however, "only if it appears that the comment may possibly have affected the verdict." Id. Reversal is mandatory if the comments are extensive, if an inference of guilt is stressed to the jury based on the defendant's silence, and if the evidence could have supported acquittal. United States v. Kennedy, 714 F.2d 968, 976 (9th Cir.1983), cert. denied, 465 U.S. 1034 (1984).
 
 
 26
 Here, the prosecutor made but one isolated comment. Although the comment might be read to stress an inference of guilt from the idea that MacDonald had put on witnesses who might be prone to lie on his behalf when he could have put on no witnesses at all, it does not stress such an inference from MacDonald's silence.
 
 
 27
 Even where a prosecutor directly refers to a defendant's failure to testify, this court has been reluctant to reverse in the absence of the above factors if the court gave curative instructions. United States v. Soulard, 730 F.2d 1292, 1307 (9th Cir.1984). Although MacDonald argues that no curative instructions were given at the time that the comment was made, defense council apparently agreed with the district court's assessment that such instructions would do more harm than good. Furthermore, cautionary instructions given in a general charge to the jury stating that no adverse inferences could be drawn from a defendant's failure to testify can act as curative instructions. See Lincoln, 807 F.2d at 809, 810-11; Soulard, 730 F.2d at 1307. Such an instruction was given in this case. We find that MacDonald's right to a fair trial was not prejudiced by this error, either standing alone or in combination with other errors.
 
 
 28
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3