Craig Alan **PEYER**, Petitioner–Appellant,

v.

William A. **DUNCAN**, Warden, Respondent–Appellee.

No. 99–55081.
D.C. No. CV 95–03789–RMB.

United States Court of Appeals,
Ninth Circuit.

Submitted April 17, 2001 *.
Decided May 1, 2001.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Before PREGERSON, FERNANDEZ, and GRABER, Circuit Judges.

MEMORANDUM**

Craig Alan Peyer ("Peyer") appeals the district court's denial of his 28 U.S.C. § 2254 petition, in which he seeks federal habeas relief from his state court conviction for first-degree murder.[1] The district

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1. Peyer's federal habeas petition is not governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), because he filed the petition

court adopted the magistrate judge's conclusion, stated in his 104–page Report and Recommendation, that Peyer was not entitled to habeas relief.

Peyer, a former California Highway Patrol ("CHP") officer, was convicted following a jury trial of murdering twenty-year-old Cara Knott ("Knott") in violation of California Penal Code § 187. The jury found that on December 27, 1986, Peyer, acting in his capacity as a CHP officer, pulled over Knott's car while she was driving on Interstate 15 ("I–15"). The jury found that Peyer directed Knott to exit the I–15 via the Mercy Road off-ramp and drive to a deserted, unlit location nearby. The jury further found that Peyer strangled Knott at that location and threw her body off a bridge.

In this timely appeal of the district court's order, Peyer argues that he is entitled to habeas relief based on five constitutional violations that were allegedly committed during his trial.[2] We have jurisdiction pursuant to 28 U.S.C. §§ 2253 and 1291, and we affirm.

## I. Prosecutorial Misconduct

Peyer asserts that his constitutional rights were violated by the prosecutor's alleged misconduct in his closing argument. Specifically, Peyer claims that the prosecutor: (1) commented impermissibly on Peyer's decision not to testify at trial in violation of *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) ("Griffin error"); (2) argued impermissibly to the jury that Peyer had an "appetite" for repeatedly stopping young women driving alone on the I–15 and ordering them to exit at the Mercy Road off-ramp; and (3) vouched impermissibly for the credibility of a witness. Peyer also argues that the cumulative effect of the alleged misconduct deprived him of due process.

■ Prosecutorial misconduct violates a defendant's due process rights when it so infects the trial as to render the proceedings fundamentally unfair. *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir.1995). We conclude that, even assuming that some of the prosecutor's comments to the jury amounted to misconduct, none of the prosecutor's comments deprived Peyer of a fair trial.

## A. Griffin Error

■ Peyer argues that the prosecutor committed a *Griffin* error by improperly commenting on his decision, protected by the Fifth Amendment, not to testify at trial. During the prosecutor's closing ar-

on November 25, 1995, nearly six months before AEDPA went into effect. Instead, Peyer's appeal is governed by the pre-AEDPA standard set forth in 28 U.S.C. § 2254(a) (1994). Under that standard, Peyer is entitled to habeas relief "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.*

**2.** Because Peyer filed his notice of appeal after AEDPA's effective date, the provisions of that statute apply to this appeal. *Slack v. McDaniel*, 529 U.S. 473, 482, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Under AEDPA, we may consider on appeal only those issues that are specified in a Certificate of Appealability

("COA"). 28 U.S.C. § 2253(c); *Hiivala v. Wood*, 195 F.3d 1098, 1103 (9th Cir.1999). A motions panel of this court granted Peyer a COA on two issues: prosecutorial misconduct and pretrial publicity. Peyer moved to expand the COA to include three more issues: failure to disclose the existence of the white coat; alleged mishandling and contamination of the blood taken from Peyer's police cruiser; and the state trial court's exclusion of evidence about the hitchhiker. We granted Peyer's motion to expand by a 2–to 1 vote. Accordingly, we will address on appeal the five issues in the expanded COA.

gument, he stated repeatedly to the jury that he was "waiting and listening for an explanation" as to why Peyer's whereabouts were unaccounted from 8:40 p.m. until after 10:00 p.m., the period of time during which Knott was killed. The prosecutor stated that "[u]p until that time, you can follow the defendant up and down his beat; up until around 8:45, 8:40, you know exactly where the defendant is. You know it by tickets. You know it by witnesses . . . . [W]eren't you waiting to find out some view of the evidence that could tell you where the defendant was when Cara Knott was being killed? Of course, there is no explanation. And the reason there is no explanation is because he was killing Cara Knott."

■ The prosecutor's repeated statement that there was no "explanation" for Peyer's whereabouts during the time that Knott was killed was not an explicit comment on Peyer's decision not to testify. Peyer argues, however, that given the time period to which the comments referred, the "explanation" demanded by the prosecutor could only come from Peyer himself. A prosecutor may not comment on uncontradicted evidence when the only person able to provide an "explanation" for that evidence is the defendant, who has chosen to exercise his Fifth Amendment privilege. *Lincoln v. Sunn*, 807 F.2d 805, 810 (9th Cir.1987).

We conclude that the prosecutor's comments do not amount to a denial of due process. *Darden*, 477 U.S. at 179, 181, 106 S.Ct. 2464 (finding that the prosecutor's *Griffin*-violating closing argument "deserves the condemnation it has received from every court to review it" but did not render the trial fundamentally unfair). First, the trial judge provided a curative instruction by telling the jury to view the prosecutor's comments not as evidence but merely as "respon[ses] to the other side's arguments." Second, the evidence accumulated against Peyer during the twenty-one day trial was compelling. Therefore, we conclude that even if the prosecutor's comments violated the *Griffin* rule, they did not deprive Peyer of a fair trial.

## B. *Propensity*

■ Peyer argues that the prosecutor impermissibly argued to the jury that Peyer had an "appetite" for predatory behavior based on his pattern of stopping young women who were driving alone at night. At trial, thirty-two witnesses, all of them young women, testified that Peyer stopped them while they were driving alone on the I–15 and ordered them to exit via the Mercy Road off-ramp. The women testified that Peyer then talked to them, sometimes for as long as several hours and often about personal matters, before issuing them a citation. Peyer argues that the testimony of these young women violated his due process rights.

We agree with the district court that the prior traffic stops shared distinct similarities with the charged crime, and therefore were properly admitted to establish Peyer's motive and identity as the person who killed Knott. *See* Fed.R.Evid. 404(b). In addition, the trial judge instructed the jury that it could not consider the prior traffic stops as evidence of Peyer's "predisposition to commit crimes or [to show] that he is a person of bad character." Because no federal constitutional violation occurred, Peyer is not entitled to habeas relief on this claim. *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir.1991).

## C. *Vouching*

■ Peyer argues that the prosecutor impermissibly vouched for the credibility of one of the witnesses, Tracy Koenig, by stating that there was "no way" that she would have "sworn under oath to a lie."

This court has stated that "[i]mproper vouching occurs when the prosecutor places the prestige of the government behind the witness by providing personal assurances of [the] witness's veracity." *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir.1992) (citation and internal quotation marks omitted) (alteration in original).

We conclude that even if the prosecutor did improperly vouch for the witness's credibility, the vouching did not so infect the trial as to render it fundamentally unfair. First, we note that defense counsel did not object or request a curative instruction. Second, we agree with the district court that the statement was "limited" and that Peyer could show "no prejudicial effect."

### D. Cumulative Error

■ Peyer argues that the cumulative effect of the individual instances of prosecutorial misconduct deprived him of a fair trial. *United States v. Hill*, 953 F.2d 452, 460 (9th Cir.1991) (reversing on basis of cumulative error). We conclude that this claim fails. Even if we were to assume that the prosecutor committed *Griffin* error and improperly vouched for a witness, these actions, considered individually and in aggregate, were not "so prejudicial as to amount to a deprivation of due process." *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir.1983).

### II. *Brady* Material

■ Knott's boyfriend testified that Knott was wearing a white Gino di Giorgio coat on the night of the murder. There is no record that any coat was found at the crime scene and positively identified as belonging to Knott. After Peyer's conviction became final, Peyer learned that a white Gino di Giorgio coat had been brought to the police lab on January 9, 1987. The coat was later discarded. Pey-er claims that the prosecution violated his constitutional rights by not disclosing the existence of the coat to defense counsel and preserving it for testing.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the due process clause requires the prosecution to turn over to the defense "evidence that is both favorable to the accused and 'material to either guilt or to punishment.'" *Bagley v. United States*, 473 U.S. 667, 674, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (quoting *Brady*, 373 U.S. at 87, 83 S.Ct. 1194). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. 3375. Peyer argues that the prosecution was required under *Brady* to disclose the existence of the white coat because it could have supplied evidence implicating someone else in Knott's murder.

The district court correctly concluded that Peyer failed to show that the white coat was material or exculpatory. The coat was never positively identified as belonging to Knott, nor did the coat have any apparent exculpatory value for Peyer. *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). For these reasons, Peyer's *Brady* claim fails.

### III. Mishandling and Contamination of Evidence

■ Peyer argues that the police violated his constitutional rights by mishandling a sample of blood taken from the door of Knott's car. In the process of testing, the blood was consumed, but no determination was made as to blood type. Because there is no evidence that the police acted in bad faith, or that the blood had any apparent exculpatory value, this claim fails. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109

S.Ct. 333, 102 L.Ed.2d 281 (1988) (holding that, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").

IV. Exclusion of the "Hitchhiker" Evidence

■ Peyer argues that the state trial court erred in excluding evidence that a hitchhiker was seen "lunging" at cars near an on-ramp to the I–15 on the day that Knott was killed. The hitchhiker was seen about two miles north of the Mercy Road exit where Knott was killed. Relying on *People v. Hall,* 41 Cal.3d 826, 833, 226 Cal.Rptr. 112, 718 P.2d 99 (1986), the trial court excluded the hitchhiker evidence because the defense could provide no evidentiary link between the hitchhiker and Knott's death. Because the trial court's decision is supported by case law and the record, we conclude that the exclusion of the hitchhiker evidence was not constitutional error. *Walters v. McCormick,* 122 F.3d 1172, 1176 (9th Cir.1997).

V. Pretrial Publicity

■ Peyer claims that his constitutional right to a fair trial was violated by the publication in local newspapers, during jury voir dire, of the adverse results of a polygraph test that he took. Peyer must show either presumed prejudice or actual prejudice to prevail on this claim. *Rideau v. Louisiana,* 373 U.S. 723, 727, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

The magistrate judge's Report and Recommendation reviewed exhaustively the precautions taken by the trial judge to discover whether the prospective jurors had read the newspaper accounts of Peyer's polygraph test. The magistrate judge concluded, and the district court agreed, that the jurors' exposure to the pretrial publicity was "minimal, at best." Only one of the jurors on the panel that convicted Peyer had heard about the polygraph test and that juror stated at voir dire that the polygraph test was meaningless.

Based on the record, we conclude that pretrial publicity surrounding Peyer's polygraph test was not so inflammatory, pervasive, and prejudicial that it presumptively deprived Peyer of a fair trial by an impartial jury. *Mayola v. Alabama,* 623 F.2d 992, 997 (5th Cir.1980) (discussing "presumption of prejudice" standard). Nor has Peyer offered any evidence of actual prejudice; i .e., nothing in the record indicates that the pretrial publicity influenced the jury's verdict. Therefore, Peyer's pretrial publicity claim fails.

CONCLUSION

For the reasons stated above, we conclude that Peyer has failed to state a claim that warrants habeas relief. His conviction is therefore AFFIRMED.