76 F.3d 390
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff/Appellee/Cross-Appellant,
v.
Mark THIERMAN, Defendant-Appellant/Cross-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
AMINO DISCOUNTERS, INC., Mark Thierman, et al.,
Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellant,
v.
Mark THIERMAN, Defendant-Appellee.
 Nos. 94-10279, 94-10293, 94-10307.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 17, 1995.
Filed Nov. 13, 1995.
Amended Jan. 18, 1996.
 
 1
 Before: GOODWIN and HAWKINS, Circuit Judges, and FITZGERALD,* District Judge.
 
 ORDER
 
 2
 With the filing of the amended memorandum, the panel votes unanimously to deny both petitions for rehearing in this matter.
 
 
 3
 Before: GOODWIN and HAWKINS, Circuit Judges, and FITZGERALD,* District Judge.
 
 
 4
 AMENDED MEMORANDUM**
 
 
 5
 Mark Thierman appeals his convictions under the FFDCA for one count of misbranding drugs with the intent to defraud or mislead consumers or the FDA, and two counts of conspiracy to violate the FFDCA with the intent to defraud or mislead consumers or the FDA. The issues on appeal include denial of his motion to sever his indictments for trial; prosecutorial misconduct; Fed.R.Evid. 403 & 404(b) error in the admission of "other bad acts" evidence; admission of evidence gathered pursuant to an invalid warrant; failure to instruct the jury on "current good manufacturing practices," an element charged in both conspiracies; failure to instruct the jury on the unanimity requirement for several of their findings; and insufficient evidence to support the verdicts.
 
 
 6
 The government filed a cross-appeal asserting that the district court failed to adjust Thierman's status under the sentencing guidelines using a fraud "loss enhancement" based on Thierman's profits. We do not reach the cross appeal because errors in the trial require reversal and remand for a new trial.
 
 FACTS AND PROCEDURAL BACKGROUND
 
 7
 Thierman first began to manufacture and sell a substance called "GHB" in September of 1989. He promoted GHB as a drug, advertising in magazines such as Muscle and Fitness and Ironman. The government first charged Thierman in March of 1992 with (1) conspiracy to violate the FFDCA between December 1989 and March 1991, (2) operating an unregistered drug manufacturing facility, (3) introducing a misbranded drug into interstate commerce, and (4) introducing an unapproved new drug into interstate commerce.
 
 
 8
 After this indictment, Thierman set up two new facilities for the manufacture of GHB. He continued to sell GHB manufactured at these facilities, but now labeled it only "GHB," and did not explicitly make any claims as to its effects. One of the facilities was destroyed by fire in July of 1992, and the other facility also experienced a fire in October of 1992.
 
 
 9
 The government then brought a second indictment charging Thierman with (1) conspiracy to violate the FFDCA between May 1991 and October 1992, (2) operating an unregistered drug manufacturing facility, (3) introducing an adulterated drug into interstate commerce, and (4) introducing a misbranded drug into interstate commerce.
 
 
 10
 In August of 1993 the court joined the two indictments for trial over Thierman's protest that he would be forced to present inconsistent defenses (defending the first indictment by asserting he was open and honest about the drug effects of GHB, and thus did not intend to defraud or mislead consumers or the FDA; and defending the second indictment by asserting that he did not sell the GHB as a drug).
 
 
 11
 After a three week trial, a jury convicted Thierman on one count of misbranding from the first indictment, and both counts of conspiracy.
 
 DISCUSSION
 I. Defendant's Motion to Sever
 
 12
 Because Thierman challenges the joinder of his two indictments for trial as prejudicial, we must determine whether, in failing to grant the motion for severance, the court abused its discretion. See U.S. v. Vasquez-Velasco, 15 F.3d 833, 844 (9th Cir.1993).
 
 
 13
 (A) Thierman argues that this challenge falls under Fed.R.Crim.P. 8(a), but it more accurately falls under Fed.R.Crim.P. 14. Both of Thierman's objections assert that prejudice resulted from joinder--a topic appropriate to Rule 14, not Rule 8(a).[1]
 
 
 14
 To establish prejudice under Vasquez-Velasco, a defendant must show such " 'clear,' 'manifest,' or 'undue' prejudice from the joint trial, that it violates one of his substantive rights, so that the prejudice is of such a magnitude that the defendant was denied a fair trial." Vasquez-Velasco, 15 F.3d at 845-846.
 
 
 15
 Thierman claims that joinder was prejudicial because (1) it forced him to present antagonistic defenses, and (2) it required the jury to "compartmentalize" evidence admitted for only one of the two counts in a case far too complex for it do so.
 
 
 16
 Joinder did not force Thierman to present antagonistic defenses. Truly mutually exclusive defenses are "said to exist when acquittal of one co-defendant would necessarily call for conviction of the other." U.S. v. Tootick, 952 F.2d 1078, 1081 (9th Cir.1991). For a single defendant in a multi-count indictment to be forced to assert mutually inconsistent or antagonistic defenses, the charging language would have to be of such a nature that one count could be defended only by proving facts, which if found by the jury to be true, would necessarily convict him on another count. This kind of compulsion was not present here.
 
 
 17
 The jury could have found that Thierman had no intent to defraud or mislead during the time period of the first count, and that there was no sale for intended drug use during the time period charged in the second count. The defenses are not mutually exclusive. The shifting claims that GHB was sold as a drug at one time and that it was not sold as a drug at another time may cast some doubt on Thierman's veracity, but these claims do not necessarily prove that the product ever was sold as a drug or that it never was sold as a drug.
 
 
 18
 Thierman found himself wishing to prove that he did not intend to defraud or mislead in one indictment because he openly manufactured GHB and promoted its drug effects to his customers. He was understandably unhappy about having to try to prove in the same trial, before the same jury, that he had not, during the time period charged in the second indictment, sold as a drug, the product he admitted to selling as a drug during the time period of the first indictment. There was no abuse of discretion in denying severance. Thierman's difficulty was of his own confection, and the government understandably attempted to take advantage of that situation.
 
 
 19
 As to Thierman's challenge of the severance denial based upon the alleged inability of the jury to compartmentalize evidence, we note that the instructions to the jury, and the verdicts returned by the jury were scrupulously selective. U.S. v. Cuozzo, 962 F.2d 945, 950 (9th Cir.1992), cert. denied, 113 S.Ct. 475 (1992). The district court gave limiting instructions at the time the evidence was initially admitted, and again in the final instructions. The jury returned a clearly understandable verdict. It convicted on only three charges out of more than twenty.[2] These factors indicate that the jury had no difficulty compartmentalizing the evidence at issue.
 
 
 20
 U.S. v. Lewis, 787 F.2d 1318 (9th Cir.1986), amended on denial of reh'g, 798 F.2d 1250 (9th Cir.1986), cited by Thierman, is unpersuasive here. Unlike the present case, the trial court in Lewis gave a limiting instruction only near the end of the trial, not at the time the evidence was admitted.
 
 
 21
 II. Prosecutorial Misconduct During Closing Arguments
 
 
 22
 Thierman argues that numerous statements by the government during closing argument constitute prosecutorial misconduct. We agree. Thierman timely objected to the most egregious of these comments, either during the closing itself or immediately afterward. The points were neither waived nor abandoned. The intemperate argument may have been in part invited, but the doctrine of in pari delicto has only limited application in a criminal appeal.
 
 
 23
 A. Characterization of Defense Attorney Statements as Lies
 
 
 24
 Thierman first contends that the prosecutor's remarks to the effect that defense counsel was lying constitutes prosecutorial misconduct. On four occasions during her lengthy closing arguments, the prosecutor referred to defense counsel's statements as lies. After the government completed its argument, defense counsel objected again to the characterization of counsel's efforts as lies.
 
 
 25
 There can be no question that personal attacks on either counsel by the other are unprofessional, and if prejudicial, require reversal. See U.S. v. Young, 470 U.S. 1, 10 (1984) (citing ABA Standards for Criminal Justice ). In this case the district court recognized the impropriety of counsel's remarks. (Trial Tr., 10/29/94 at 60.) Nonetheless, we have examined the statements in the context of the trial as a whole, as required by Young, 470 U.S. at 10. While the personal attacks should have been stopped at once by the trial court, we find in them, standing alone, insufficient grounds for a new trial. We note that there was unprofessional conduct and insufficient civility on both sides. In this context, it is not "more probable than not that the misconduct in question materially affected the jury's verdict," as required under harmless error review. U.S. v. Mostella, 802 F.2d 358, 361 (9th Cir.1986).
 
 B. Inflammatory Statements
 
 26
 Thierman next claims that the prosecution made several statements with the intention of inflaming the jury. The essence of Thierman's complaint is captured by his objection to the following: calling him a "drug dealer," a "dangerous guy," and an "expert criminal;" referring to the juror's children as potential victims; and referring to witnesses getting "burned." (There was evidence that fires had broken out in Thierman's plant.) Thierman objected to the characterization "criminal" and "dangerous," as well as the comments regarding witnesses getting burned. (Trial Tr., 10/29/94 at 61-62.) We review those comments that were objected to for harmless error.
 
 
 27
 The prosecutor's comments on Thierman's character amount to no more than assertions as to what she had to prove to win her case--that Thierman was a dangerous drug dealer. This court found that calling a defendant a "dope dealer," during a trial where the prosecution's duty is to prove defendant is indeed a drug dealer, does not amount to a "foul blow." U.S. v. Necoechea, 986 F.2d 1273, 1282 (9th Cir.1993).
 
 
 28
 U.S. v. Williams, 989 F.2d 1061 (9th Cir.1993), relied on by Thierman, is distinguishable. There, the court found that the prosecutor had intentionally played on a Montana jury's parochial tendencies when the prosecutor threw a set of keys at an out of state defendant, and told the jury, "tell [defendant] to take his keys and send them back to Denver." Id. at 1072. In contrast, there is no evidence in this case that the prosecutor intentionally played upon any inappropriate tendencies of the jury.
 
 
 29
 C. Comments on Defendant's Failure to Testify
 
 
 30
 The more troublesome assignment of error questions the prosecutor's references during argument to Thierman's failure to testify, in violation of Griffin v. California, 380 U.S. 609 (1965), reh'g denied, 381 U.S. 957 (1965). Under Griffin, a prosecutorial statement is impermissible if "it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.1987).
 
 
 31
 We review a Griffin violation de novo, but will not reverse a conviction if the error is harmless. U.S. v. Mayans, 17 F.3d 1174, 1185 (9th Cir.1994). We will examine each of the three challenged comments in turn.
 
 
 32
 (1) In regard to a conversation between defendant and witness Ed Byrd: "Mr. Thierman did not dispute that when Ed Byrd testified."
 
 
 33
 In Mayans, 17 F.3d 1174, this court distinguished between prosecutorial comments on the failure of the defense to present exculpatory evidence and prosecutorial comments on the failure of the defendant to do so. Id. at 1185. As here, in Mayans the prosecutor referred to the failure to contradict testimony regarding a conversation between only the defendant and the witness. Even though in reality only the defendant could have contradicted the testimony, the court found no error when the prosecution pointed out that the defense had not contradicted the testimony. Id. In reaching this holding the court contrasted the cases of U.S. v. Sehnal, 930 F.2d 1420 (9th Cir.1991), cert. denied, 502 U.S. 908 (1991), and Sunn, 807 F.2d 805. In Sehnal the prosecutor continued to say "ask him," referring to defendant, Sehnal, 930 F.2d at 1424, while in Sunn the prosecutor repeatedly stated the "only ... person who can tell us," and the "only other person who can testify [is the defendant]." Sunn, 807 F.2d at 809, n. 1.
 
 
 34
 While not quite as egregious and pointed as the repeated references in Sunn and Sehnal, the prosecutor's remarks here refer specifically to the "defendant" rather than to the "defense" as in Mayans. We are not disposed to treat this particular exercise in dangerous gamesmanship as harmless. Reversal is mandated "where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal." Sunn, 807 F.2d 805, 809. Such conditions exist here. For while there was substantial evidence of Thierman's guilt, it was far from overwhelming. Much of the prosecution's case depended upon the jury believing those witnesses whose credibility the prosecutor tried to bolster through repeated comments on Thierman's silence.
 
 
 35
 (2) Comment that a witnesses' testimony was "not contradicted by the defendant or by any other witness."
 
 
 36
 This comment receives the same analysis as that above. We reject the government's attempt to paper over the blunder by saying the jury would be even less likely to take this statement than the prior statement as a comment on the failure of Thierman to testify since the prosecutor referred to "the defendant and other witnesses."
 
 
 37
 In Harrington v. California, 395 U.S. 250, 254 (1969), the Supreme Court instructed us to review a claim of Griffin error by asking this: absent the prosecutor's allusion to the failure of the defense to proffer evidence to rebut the testimony of the victims, is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty? On this record, we cannot say that the above two Griffin errors were harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 (1967).
 
 
 38
 (3) Question to the jury, "are you going to believe Mr. Hirsh, are you going to believe the defendant, or are you going to believe the evidence ..."
 
 
 39
 The necessary implication of the quoted remarks reminded the jury of Thierman's failure to testify, or, because he obviously did not testify, to wonder why. This kind of pandering to a jury's curiosity on this very sensitive subject is exactly what the Griffin rule is intended to prevent. While the record reflects that the defendant did not object to this comment at the time it was made, the prosecutor's conduct amounts to plain error. The repeated Griffin errors call for a new trial.
 
 D. Prosecution's Vouching for Witnesses
 
 40
 Thierman challenges four comments as improperly vouching for witnesses. Thierman objected specifically to only one comment, although he did object in general to the repeated "vouching" at the end of the prosecution's rebuttal.
 
 
 41
 (1) Prosecution's remark: "I believe Jacqueline Rodgers when she testified."
 
 
 42
 This statement constituted vouching on the prosecution's part, as the government readily concedes. As Thierman did specifically object to this comment, we review it for harmless error. We look to several factors, including: (a) the form of the vouching; (b) how much the prosecutor implicated that her belief is supported by extra-record knowledge; (c) the degree of personal opinion asserted; and (d) the importance of the testimony to the case. Williams, 989 F.2d at 1072.
 
 
 43
 Here, while the prosecutor impermissibly asserted her personal opinion, there was no implication of extra-record knowledge and the testimony was of minor importance.[3] Therefore, we find the error harmless, and mention the matter only to caution counsel to avoid the error in the event of retrial.
 
 
 44
 Thierman's brief, perhaps in an excess of caution, assigns error to numerous other parts of the prosecution's final argument as alleged vouching. We have examined all of them and find them within the permissible range of argument and persuasion without the vice of suggesting that the lawyer knows from sources outside the record that the particular witness is more to be believed than witnesses of the defendant.
 
 
 45
 In order to constitute vouching, a statement must place the prestige of the government behind a witness through personal assurance for the witness's veracity, or suggest that information not presented to the jury supports the witness' testimony. Necoechea, 986 F.2d at 1276. These comments did neither.
 
 
 46
 E. Prosecutions False Assertions Regarding Testimony
 
 
 47
 Thierman argues that the prosecution knowingly made three false assertions during closing:
 
 
 48
 (1) The prosecutor implied that the recipient of a package of GHB was not a medical doctor, and yet defendant labeled the package "Dr. Bruni."
 
 
 49
 Because there was a stipulation by both parties, stating that Dr. Bruni was indeed a doctor, we mention this matter only to caution the prosecution to be careful should the government elect to pursue another trial.
 
 
 50
 (2) Prosecution's assertion that defendant never tested his GHB for purity.
 
 
 51
 Thierman argues that this statement is false and misleading due to the prosecution's stipulation that the GHB samples admitted at trial were pure.[4] However, the stipulation stated merely that the samples presented in court were pure--it said nothing as to whether prior testing had been done or whether other batches of GHB sold by Thierman were pure. Moreover, the prosecution quickly qualified its statement by stating, "or at least there's been no evidence of that." Thus the prosecution does not appear to have made an intentional misstatement of fact.
 
 
 52
 (3) The prosecutor argued that defendant sealed his bottles, and that such sealing was improper as it misled customers.
 
 
 53
 Thierman argues that this was a false and misleading argument as good manufacturing practices required that he seal his bottles. However, the prosecutor did not allege that Thierman did not follow good manufacturing practices when he sealed his bottles. Rather, her argument appeared to be that by following some practices of other druggists--those visible to a customer--Thierman implied that he was following other, non-visible practices. We find nothing misleading or improper in this argument.
 
 
 54
 F. Prosecution Failed to Follow Court Orders
 
 
 55
 Thierman also contends that the prosecutor failed to follow court orders by expanding a witness' testimony beyond GHB, failing to provide a memo adopted by a witness until the day before the witness testified, and failing to provide an expert's resume prior to the time that expert testified. None of these assignments requires further discussion.
 
 
 56
 The memo adopted by witness Byrd was turned over a day prior to Byrd's testimony due to an inadvertence on the government's part. The district court did not question the prosecution's integrity regarding this delay, and Thierman has given us no reason to do so. The government also points out that regardless of any order by the district court, it had no duty to turn over the material earlier. U.S. v. Spagnuolo, 515 F.2d 818, 821 (9th Cir.1975).
 
 
 57
 G. Comment on Defendant's Objection to Evidence
 
 
 58
 During her closing argument, the prosecutor remarked, "you heard Mr. Hirsh trying to object to the admission of that evidence and it was overruled." While Thierman did not object to the comment, the district court expressed its concern over the impropriety of it. (Trial Tr., 10/29/95 at 60). In response, the court instructed the jury, for a second time, that the defense has an obligation to object and that they should not concern themselves with either the objections or the court's ruling on them. Id. at 61. Given this curative instruction, the overall tenor of the closing arguments as previously discussed, and the isolated nature of the comment, this comment alone would not warrant reversal. In the event of another trial, we assume the government will be able to restrain itself from making such comments.
 
 
 59
 III. Admitting Evidence Over Defendant's 404(b) and 403 Objections
 
 
 60
 Thierman argues that the district court should have excluded the following evidence under Fed.Rs.Evid. 404(b) and 403: (A) testimony Thierman burned records after his home and business were searched; (B) testimony Thierman paid for employees to stay at a hotel in order to make them unavailable to the Grand Jury; (C) the introduction of "dummy invoices" for products shipped to Canada; (D) testimony of Thierman's personal use of GHB with employees and a customer; (E) repeated showing, by slideshow and video, of the aftermath of an explosion and fire at one of Thierman's factories; (F) testimony of burns an employee received during one of the fires. We have reviewed the district court's actions for abuse of discretion. U.S. v. Brooke, 4 F.3d 1480 (9th Cir.1993). We find no abuse.
 
 
 61
 (A) & (B) Thierman first contends that the burning of records and hiding of employees fall outside the time period of the alleged conspiracies and thus is inadmissible. The government points out, however, that such evidence is admissible as "consciousness of guilt" evidence. "An attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt and admissible on that basis." U.S. v. Castillo, 615 F.2d 878, 885 (1980). Thierman's contention that this doctrine does not apply to the burning of records because he did not know at that time what charges might be brought against him is unconvincing. He had been served with a subpoena for GHB, along with other drugs. A jury reasonably could infer that he knew that a charge regarding the manufacture of GHB might come at any time, and that at least some of the records burned related to the manufacture of GHB. U.S. v. Jaramillo-Suarez, 950 F.2d 1378, 1385 (9th Cir.1991).
 
 
 62
 (C) The district court admitted the "dummy invoices" as evidence of interstate commerce. In light of other evidence which existed to prove interstate commerce, the admission of these invoices probably constituted overkill but not undue prejudice. Given the other evidence before the jury and their selective verdict, it can not be said that the admissions of these invoices affected the jury verdict.
 
 
 63
 (D) Thierman argues that the testimony regarding his personal use of GHB should have been excluded as irrelevant. The government responds that whether or not Thierman sold GHB for use as a drug was the key issue in the second count, and this testimony supported their contention that Thierman did sell GHB for drug usage. Storage Spaces Designated Nos. 8 & 49, 777 F.2d 1363, 1366 (9th Cir.1985), cert. denied, 479 U.S. 1086 (1987), states "[t]his intent may be derived or inferred from labeling, promotional material, advertising, or any other relevant source." (emphasis added.) The fact Thierman used GHB with a customer for the purposes of "getting high," certainly serves as a "relevant source" for inferring that he sold GHB with the intent it be used as a drug. His argument that Storage Spaces Nos. 8 & 49 addresses objective drug use, (a cocaine substitute), fails to materially distinguish the case.
 
 
 64
 (E) & (F) As to the evidence regarding the employee's burns and the pictures of the fire, both pieces of evidence had some relevance. The employee's burns came in as part of his testimony regarding the manufacturing processes at the plant. Similarly, the pictures of the aftermath of the explosions and fires also came in as evidence of the manufacturing process at the plants, and as evidence that GHB was manufactured at these plants. All evidence was accompanied by a limiting instruction informing the jury that Thierman was not on trial for the explosions or fires themselves. Given the probative value of this evidence, as well as the limiting instruction, Thierman has failed to show that the district court abused its discretion in refusing to exclude this evidence under Fed.R.Evid. 403.
 
 
 65
 IV. Evidence Seized Under the Search Warrants
 
 
 66
 Thierman contends that the district court erred in refusing to grant his motion to suppress on the grounds these two search warrants were overbroad. Thierman does not name exactly what evidence he objects to, but argues any evidence admitted which was gathered pursuant to items 1, 2, 3, 4, 5, and 7 of the search warrants should be suppressed. The district court denied Thierman's motion to suppress, and this court reviews de novo.
 
 A. Items 1, 5, & 7
 
 67
 Thierman objects to items 1, 5, and 7 because they use the term "unapproved pharmaceutical drugs" while the affidavit provides probable cause only for the narrow category of GHB. Whether or not the warrant's use of the term "unapproved pharmaceutical drug," rather than GHB specifically, created a want of probable cause to support the warrant is a close question. However, under U.S. v. Leon, 468 U.S. 897 (1984) and U.S. v. Crozier, 777 F.2d 1376 (9th Cir.1985), reh'g denied, 468 U.S. 1250 (1984), this court ordinarily will not overturn the district court's decision so long as "the warrants were not so facially overbroad as to preclude reasonable reliance by the executing officers." U.S. v. Michaelian, 803 F.2d 1042 (9th Cir.1986). Given the close nature of the overbreadth determination, the warrants clearly are not so overbroad as to warrant reversal under Leon.
 
 
 68
 In arguing the warrant is overbroad, Thierman relies on Storage Spaces Designated Nos. 8 & 49, 777 F.2d 1363, wherein the court reviewed a warrant which allowed for the seizure of all items "which are evidence of violation of, or in violation of, 21 U.S.C. § 331(a) and (k)." Id. at 1369. The court stated that normally such a broad allowance would not be valid. Id. Nonetheless it upheld the warrant because several items immediately preceding the broad allowance delineated specifically what drugs were to be seized, both by their technical and street names. The court believed the more specific items provided the necessary limiting factor for the broader item.
 
 
 69
 Here, in contrast, not a single drug is named. Rather the warrant simply uses the term "unapproved pharmaceutical drug." While the government argues that the affidavit provides support for this broader category, the affidavit does not mention any drug other than GHB, and the failure of the government to account for why it could not have limited the warrant to GHB alone is explainable only by the fact that this prosecution was carried forward by a regulatory agency and not by the United States Attorney. Nonetheless, under Leon, 468 U.S. 897, no reversible error is apparent.
 
 B. Items 2, 3, & 4
 
 70
 Thierman challenges the evidence gathered under items 2, 3, and 4 as overbroad as well. We do not review items 2 and 3, (narcotics and drug related monies respectively), as it appears no evidence gathered pursuant to these items was admitted at trial. Even if these items were overbroad, the remedy would simply be to exclude them, not invalidate the whole warrant. U.S. v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir.1984), cert. denied, 466 U.S. 977 (1984).
 
 
 71
 Item 4 describes a whole list of documents to be seized, ranging from books to bank records, which evidence "the obtaining, secreting, transfer, concealment and/or expenditure of money including computerized records." Thierman relies on U.S. v. Stubbs, 873 F.2d 210 (9th Cir.1989) in arguing that this description is overbroad. In Stubbs, the court found an item, similar to that here, overbroad because of the absence of probable cause to seize all documents in Stubbs office. However, unlike this case, the defendant in Stubbs ran a legitimate business in the same building as his illegitimate one. Moreover, the investigators had the cooperation of many of Stubbs employees who could have asisted in differentiating between the legitimate and illegitimate documents. Id.
 
 
 72
 In this case there was no indication of a legitimate business at the warrant sites. This court found this distinction critical in U.S. v. Hernandez-Escarsega, 886 F.2d 1560 (9th Cir.1989), cert. denied, 497 U.S. 1003 (1990), where the court upheld a warrant for all records because there was no evidence that the government could have separated legitimate from illegitimate records. The district court's denial of Thierman's motion to suppress was free from reversible error.
 
 
 73
 V. Failing to Instruct on the Federal Regulatory Requirements
 
 
 74
 Thierman contends that the district court erred when it instructed the jury on the crime of selling adulterated drugs by failing to maintain "current good manufacturing processes," (CGMPs) but failed to then further instruct them on the federal regulations which define what constitutes CGMPs. The government responds that the court properly instructed the jury on the basic elements, and the jury had sufficient guidance from testimony to determine whether Thierman employed CGMPs or not. We review for plain error a failure to give an unrequested instruction. U.S. v. Whitmore, 24 F.3d 32, 34 (9th Cir.1994).
 
 
 75
 Thierman's claim that this case falls within the parameters of U.S. v. Kostoff, 585 F.2d 378 (9th Cir.1978), while impressive, is insufficient. As here, the Kostoff court reviewed a situation where the defendant was charged with a two prong conspiracy. Unlike the present case however, the court in Kostoff failed to give any instructions on one of the two alleged object offenses. The court found this total lack of instructions on an object offense (an element of the crime) constituted plain error. Id.
 
 
 76
 In contrast, the district court in this case instructed the jury on the crime of selling adulterated drugs, and the definition of adulterated drugs. These instructions, matched with the testimony on CGMPs, should have provided sufficient direction for the jury.
 
 
 77
 In the event of a re-trial, the district court may wish to re-visit the issue, particularly if the government insists on making use of the "burn" evidence (Sec. III(E) & (F)) and its arguments that this evidence shows "bad" manufacturing practices on the part of defendant.
 
 VI. Failing to Give Unanimity Instructions
 
 78
 Thierman contends that the complexity of the case required the district court to give unanimity instructions on the objects of the conspiracies, the theory to "defraud or mislead the FDA or consumers," and the theory of "intended drug use." We review for plain error the failure to give an unrequested unanimity instruction. U.S. v. Payseno, 782 F.2d 832, 834 (9th Cir.1986).
 
 
 79
 The district court instructed the jury that it must consider each count separately, that the members must be unanimous in their verdict, and that the members "must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy." Thierman claims that these instructions left room for the jury unanimously to convict him of conspiracy, but not unanimously agree on which object of the conspiracy served as a basis for the finding of guilty.
 
 
 80
 In most cases, a general unanimity instruction is sufficient. "Where it appears however, that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice." Payseno, 782 F.2d at 836.
 
 
 81
 We have upheld instructions similar to the ones given in this case in U.S. v. Friedman, 445 F.2d 1076 (1971), cert. denied, 404 U.S. 958 (1971). There, the district court gave a general unanimity instruction and then told the jury that it must find a conspiracy to commit at least one of the alleged crimes, and the commission of at least one of the overt acts. Given these instructions, the court stated: "We cannot swallow appellants' argument that, under the instructions given, the jury could have unanimously found appellants guilty of conspiracy, yet not have unanimously agreed on what the conspiracy was." Id. at 1084.
 
 
 82
 While Thierman correctly contends that the defendant in Friedman had also been convicted of four substantive charges which had also been alleged as possible objects of the conspiracy, the court's ruling in Friedman did not rely on this fact. Thus, under Friedman, we find the district court's instructions to be free of reversible error.
 
 
 83
 Thierman also contends that the district court should have instructed the jury that it must unanimously agree on (1) who was defrauded or mislead--the FDA or consumers; (2) whether the party was either defrauded or mislead; and (3) a theory of intended drug use. Yet Thierman failed to support his contention that these issues presented a potential for jury confusion so that a special unanimity instruction beyond the general one was required. While we find no reversible error in the failure to give an unrequested unanimity instruction, it would be prudent to give it in the event the government elects to pursue a new trial.
 
 VII. Sufficiency of the Evidence
 
 84
 Thierman maintains that there was insufficient evidence to support either his conviction for the substantive charge of misbranding in the first indictment, or for the conspiracy charge in the second indictment. The government claims it presented more than enough evidence to prove each element of the charges. We cannot say that no rational trier of fact could have found the elements of the charged offense beyond a reasonable doubt. U.S. v. Quinn, 18 F.3d 1461, 1465 (9th Cir.1994), cert. denied, 114 S.Ct. 2755 (1994).
 
 
 85
 A. Substantive Charge of Misbranding (Count IX)
 
 
 86
 Thierman argues that the evidence presented on the count of misbranding for which he was convicted did not differ in any significant manner from the evidence of the other misbranding charges of which the jury acquitted him. The only variances, Thierman argues, were the prosecution's false insinuations that the recipient of the drugs was not a medical doctor, but the package sent to him used the term "Dr.," and testimony regarding an invoice which did not match the contents label.[5] Thierman goes on essentially to argue that the jury must have convicted him because the mismatching invoice and label resulted in "misbranding"--a theory at variance with the charging documents. The prosecution responds that it provided much evidence that the GHB Thierman sold during this time period was "misbranded" because of its deleterious nature. Moreover, the evidence regarding the invoice went to proving the element of "intent to defraud or mislead" rather than the element of "misbranding."
 
 
 87
 Based on the evidence presented, a rational trier of fact could have found all the required elements to convict Thierman of count nine of the indictment. While it is strange that the jury convicted him of only the one count, a reasonable person could believe the drugs were misbranded for the purposes of all the counts, but only find the required intent to defraud or mislead in count nine due to the mismatching invoice.
 
 
 88
 B. Conspiracy Conviction for the Second Indictment
 
 
 89
 Thierman contends that this court should reverse his conspiracy conviction on the second indictment because of a lack of proof on two elements: (1) existence of a conspiracy, and (2) sale of GHB for intended drug use. Thierman argues that there was insufficient proof of an agreement, relying heavily on prosecution witness Maldonado's testimony that he neither intended to break the law, nor agreed to do so with Thierman. Maldonado's knowledge regarding the law matched with his actions belie his contention there was no intent to violate the FFDCA. Further, the jury could infer an agreement from the evidence regarding the concerted action between the alleged co-conspirators to sell bulk GHB. In U.S. v. Disla, 805 F.2d 1340, 1348 (9th Cir.1986) this court stated, "A formal agreement is not necessary; rather the agreement may be inferred from the defendants' acts pursuant to the scheme, or other circumstantial evidence."
 
 
 90
 Here, there was evidence that Thierman set up two clandestine labs for manufacturing GHB, shipped GHB to client Antosh, and that he was assisted in this process by witness Maldonado. A rational trier of fact could infer from this evidence that Thierman had entered into an agreement with at least Maldonado and Antosh to violate the FFDCA.
 
 
 91
 Thierman misplaces his reliance on U.S. v. Melchor-Lopez, 627 F.2d 886 (9th Cir.1980). Unlike the present case, a final agreement was never reached in Melchor-Lopez. The defendant there entered discussions about violating the law, but conditioned his agreement on events which never occurred. Here, in contrast, an agreement was reached, and action was taken.
 
 
 92
 Thierman also claims that there was no evidence that he sold GHB with the intent that it be used as a drug. However, there was testimony that he used GHB with client Antosh in order "to get high," and that he had knowledge of Antosh's intent to sell the GHB to individuals at gyms. From this evidence, a rational trier of fact could conclude that Thierman sold GHB for "intended drug use."
 
 
 93
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Fed.R.Crim.P. 8(a) provides: "Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."
 Fed.R.Crim.P. 14 provides: "If it appears that a defendant or the government is prejudiced by a joinder of offenses ... the court may order an election or separate trials of counts ... or provide whatever other relief justice requires."
 
 
 [2]
 Thierman maintains that the selective verdict hides the inability to compartmentalize because the jury convicted on the two conspiracy charges--the only ones which did not occur on a specific date. However, the two conspiracies were limited to specific time periods as well, albeit longer ones, and separated by one year. There is no reason to believe the jury was less equipped to deal with these larger, discrete time periods than they were with the single day periods
 
 
 [3]
 See Brief for the Appellee, p. 17, fn. 14, stating that Rodgers' testimony focused on users' adverse reaction to GHB and was largely repetitive of several other witnesses' testimony. Thierman has not contested this argument, nor has our examination of the excerpts of record revealed any key testimony to which only Rodgers testified
 
 
 [4]
 Thierman also argues that prior testing had occurred, and that the prosecution knew of this testing. We will not consider this alleged evidence of testing because Thierman failed to present this evidence to the trial court. See Defendant's Motion to Expand the Record, filed with this Court June 30, 1995
 
 
 [5]
 The label read "Somatomax P.M.," and the invoice read "Somatomax A.M."